Curia, per

O’Neall, J.
The various grounds of appeal seem to me
to present only two distinct subjects for the judgment of this court.
1st. The admissibility of evidence of the character of the witness, William Deloach.
*73 2d. The existence of the animus testandi, on the part of the deceased, ht the time of the execution of the will.
Under these heads, as briefly as possible, I will endeavor to state the conclusions of the court upon the different points made in the argument, with such reasons for the same as appear to be necessary to be assigned'.
1st. I concur fully with the judge below, that evidence of the character of William Deloach was proper and admissible. In M'Elwee vs. Sutton, 2 Bailey, 128, the declaration and affidavit of a deceased witness to a bill of sale, that it did not bear its true date, were held to be competent to rebut the legal conclusion, from proof of his hand-writing, that the deed Was a true and genuine paper, upon the presumptions — 1st. That if it had not been so, he would not have witnessed it. — 2d. That if alive, he would' have given all the proof necessary to support it. When the hand-writing of a witness who is dead, is proved, to establish a deed, if its effect may be destroyed by proving facts which shew that the ordinary and usual legal conclusion ought not to follow, surely it is equally competent to'su’s-’ tain and fortify that conclusion by shewing corroborating facts.
It could not be denied, under the authority of the case to which I have referred, that the declarations of William Deloach, that the will was improperly executed, or executed by the deceased when of unsound mind, would have been admissible to destroy the legal inference of due execution, from proof of his hand-writing. So, too, proof of his bad character would have had the same effect, and would have been also admissible. When there was a conflict between the testimony which the law presumes him to give, and that actually given by a living witness, proof of his good character would seem to be admissible, as a circumstance in aid of, and in corroboration of, the legal conclusion.' In this point of view, it is unnecessary to consider whether the evidence which he did give before the Ordinary, on the probate of the will iff common form, was, or was not, properly admissible. It was merely to the facts which the law implies from the proof of hand-writing, and could have had no effect, either upon this question, or the result of the case.
2d. The capacity and will of a testator are both essential to the validity of a testament. But both, I might say, are presumed in the first instance, from the fact of execution. For the law presumes every man capablé of doing any act which he executes, until the contrary is shown. So every act done, is presumed to be voluntary, until the contrary appears. These are general principles, applicable to every case,-but more especially to such an one as this. The objections made on this part of the case, are of law and of fact; and in the first class, it is urged that there was no publication *74 of the will. As to this, the answer is obvious, that no formal act of publication was necessary. When signed by the testator in the presence of the witnesses required by law, and witnessed by them actually or constructively in his presence, it was a legal publication. The appellant has also supposed that general incapacity on the part of the testator was proved? and that it1 was incumbent on the appellee to show the existence of capacity at the moment of execution. This involved both matters of fact and law. To decide upon either, it was necessary to fix the degree of capacity which would enable a party to make a will. This was perhaps as well fixed by the judge below, when he said that it required such a portion of understanding as would enable him to do a binding act, as it could have been in any other terms. He did not test the testator’s capacity to make a will by his ability to make a contract, as was supposed by the counsel-. It may be, that a party whose contracts would be supported, could not make a will; but I should hesitate long in stating any¡such as a general legal rule. Generally, the rule applicable to both is the same; the party must have mind enough to understand the act he is about to do. The rule stated in Tomkins vs. Tomkins, 1 Bailey, 92, that “if a man possess mind sufficient to transact the common business of life,”he may make a will, is in substance the rule laid down by the judge below. The legal test of capacity being properly put to the jury, it then was necessary that the jury should decide from the facts, whether be had that much capacity at the moment of execution ; and a want of it at that time, the appellants were bound to show. The proof did not establish such a general want of understanding, as made it incumbent on the appellees to show that the will was executed at a moment when the deceased was not laboring under such an incapacity. At most, the proof only makes out instances of longer or shorter incapacity, arising from drunkenness. The burthen of shewing the execution at a moment when the deceased was incapable of transacting the ordinary business of life, rested, therefore, upon the appellants. The deceased being generally capable, it was not necessary that there should have been any proof of instructions to write the will, or that, after being written, it was read over to him. For, from the fact of execution, by a capable man, the law implies that he knew the act, in all its relations, which he did. If a party be capable of reading a will, and have the opportunity of doing so, as where it remains in his possession after execution, these facts generally would dispense with the proof of instructions or reading over. - The rule in this respect only applies to a case where a will is prepared for and executed by a man of doubtful capacity in his last illness, and I might add 'in extremis, as was the case in Tomkins vs. Tomkins, *75 I Bailey, 92. But where a man lives for a considerable time after the execution of the will, and is in the constant discharge of the ordinary business of life, it is wholly unnecessary to prove instructions, or a reading over, to give validity to the will. See the cases of Warley vs. Warley, and Hobby vs. Bobo.
Patterson Sf DeTreville, for motion. Coleock Bailley, contra.
All the other points made under this head, relate to the facts. It is true some of them question the correctness of the Judge’s charge in several respects, but it is only necessary generally to remark, that the errors complained of were mere matters of advice, as to the effect of the evidence, which the jury were at liberty to adopt or reject, as they might think proper; such constitute no grounds for a new trial. It is, however, due to the judge below to say, that we think his advice to the jury upon the facts, was generally correct.
The motion for a new trial is dismissed.
DeSaussure, Harper, Johnston, Butler, Gantt, Evans, CC. and JJ. concurred.